Thank you, Your Honor. May it please the Court, Cheryl Gordon-McLeod on behalf of Mr. Shardt. The sentencing issue in this case is whether Apprendi applies to this petitioner who seeks its protection on habeas corpus rather than on direct appeal. And that's the key issue in this case because I think it's pretty clear that on the merits he wins under Apprendi if he can get to the merits. Apprendi held that any fact that increases the punishment for a crime above the statutory maximum must be proven to the trier of fact, the jury, beyond a reasonable doubt, and that didn't happen here. His sentence was increased by two separate aggravating factors. They both included the fact that there were multiple additional current offenses rather than prior crimes, and it was admitted by the State that they couldn't prove this to the jury beyond a reasonable doubt, and that that's why they were bringing it to the judge of sentencing. What was the highest statutory sentence available for conviction of one count? The highest statutorily available sentence for the conviction of one count. You know, I'm not sure if it was a Class A or a Class B. I think — I'm not sure. I'll ask that on reply if I can. The highest sentence within the Guidelines range was 102 months, and that's now considered the statutory maximum. But as I understand Apprendi — and, of course, Apprendi has potentially been superseded by Blakely, but as I understand Apprendi, it said so long as the statutory maximum is not exceeded, it does not matter whether the trial judge — the sentencing judge, in applying enhancement factors, found facts beyond a reasonable doubt. Apprendi says only when you go above the statutory maximum does that matter. So I'm trying to figure out what the statutory maximum is. Assuming he's convicted only for one count, which the jury was told, listen, all you need is one episode, that's enough to convict. Correct. So I'm trying to figure out what that statutory maximum is, and you can't tell me? It was really above 204. It was above 204? It was above 204 months. I don't remember if it was a 20-year statutory maximum or not, but I believe it was above 204 months. And he was sentenced, in fact, to how much? Two hundred and four months, twice the high end of the SRA, the Sentencing Reform Act maximum of 102 months. But the statutory maximum for the crime is higher than the amount he was sentenced to? I disagree, Your Honor. I don't think we can say that anymore after Blakely. I think Blakely — And I understand that Blakely may change the equation, but at the moment you're arguing under Apprendi. Correct. I think Blakely clarifies rather than changes the equation. That's what Blakely itself said about what it was doing with Apprendi. I see. So you're now trying to bring yourself within the Blakely rule as sort of comprised within Apprendi? Well, what I'm trying to say is that Blakely — well, I think what the Supreme Court said in Blakely is that it was applying Apprendi to the Sentencing Reform Act in the State of Washington, and in applying it, it determined that the State statutory maximum was the maximum of the guidelines range, because here in Washington, unlike the Federal guidelines, that's determined by statute. So the argument that we made in the opening briefs, I believe, is the argument that the Supreme Court in Blakely applied from Apprendi. I think that's what the Blakely majority said when they said that they were merely applying Apprendi. I think that's what the Blakely dissent said, all four of them, when they said — when they called the majority those who were living in Apprendi land, when they said that the majority was bringing Apprendi to its logical conclusion, and when Justice O'Connor, in dissent, predicted that, although they held that day that Blakely wouldn't apply retroactively, it was certainly clear that there was an open question about whether everything back to the year 2000, when Apprendi decided, would be up for grabs under the Supreme Court's Blakely interpretation of Apprendi. So I understand the distinction that you're trying to draw, whether Blakely was a complete break or separate from Apprendi, and whether Apprendi is the case that I need to wrap my head around. Ginsburg. But, Counsel, how do you get around the fact that Blakely isn't retroactive? Kovner. Well, my principal argument is that we're relying on Apprendi, and, indeed, in the opening briefs, the only case we cited was Apprendi. The Blakely majority says that Blakely came straight from Apprendi. The Blakely dissenters did not dissent on the basis that they disagreed with the Blakely dissenters dissented on the basis that they disagreed with Apprendi, thus further underscoring the fact that Apprendi compelled Blakely. The case is so So let me ask you this. If you lose under Apprendi, then there's no need for us to consider Blakely under your approach? No. I do have a fallback argument about Blakely, which we've made in the briefs, and I can proceed to that at this point. The argument under Blakely is that if Blakely is the case, if Blakely is the sole case that compels the result, and if Blakely was not compelled by Apprendi, although I believe both Blakely, Ring, and Shryo all call Blakely a case, all say that they were themselves compelled by Apprendi, if Blakely is nevertheless the case that I have to wrap myself up in, the first argument is that the beyond-reasonable-doubt right that we're arguing about here is a substantive right rather than a procedural right. When we're talking about retroactive application of Blakely, the T That's a tough argument to make. That's why I started with the fact that Apprendi is the key case. Nevertheless, it's not the argument that Shryo left open in its footnote 1. Shryo said that the decision-maker decision that it made, in other words, the judge rather than the jury making the decision, was clearly procedural. Shryo looked at four things as I read that decision in coming to the conclusion that the decision-maker argument was procedural. The four things were ex post facto cases and how they treated allocation to a decision maker, eerie choice of law cases, they looked to past pre-T cases and how they had treated allocation to the decision-maker, and they looked at the definition of substantive rather than procedural. Four things that they looked at. Let me look at each of those four for beyond-reasonable-doubt. Let me ask you this, though. If you say that Blakely is compelled by Apprendi and Apprendi is held to be procedural, then how is Blakely substantive then? When Shryo held that Ring was procedural, Shryo was referring to the Sixth Amendment holding of Ring concerning judicial rather than jury facto. Let's ask you about Apprendi. Apprendi also went on the Fourteenth Amendment beyond-reasonable-doubt holding. That's the aspect of Apprendi that we're saying is substantive rather than procedural. I understand that Shryo characterized the Sixth Amendment holding of Apprendi as a procedural one, the Sixth Amendment holding of Ring, a fortiori the Sixth Amendment holding of Apprendi as a procedural one. Shryo made no statement about the beyond-reasonable-doubt holding of Apprendi. And beyond-reasonable-doubt, of course, was not at issue in Shryo or in Ring because the aggravating factors in Arizona already had to be proven beyond-reasonable-doubt. The only portion of Apprendi at issue in that case was the decision-maker portion, judge rather than jury. That was procedural. There's three ways that the beyond-reasonable-doubt decision is distinguishable from the judge versus jury decision. First, the Erie cases, the choice-of-law cases, that was one of the things that the Shryo court looked to. How did the choice-of-law cases treat this as substantive or procedural? Well, they treat allocation to judge rather than jury as procedural, but they treat the beyond-reasonable-doubt, the burden of proof, as substantive. It also looked at the ex post facto cases. Ex post facto cases treat allocation to judge rather than jury as procedural. Ex post facto cases, however, treat beyond-reasonable-doubt standard, the standard of proof, as substantive, something that can't be applied retrospectively without violating the ex post facto clause. Shryo looked at, what was the third thing Shryo looked at? Oh, Shryo looked at DiStefano, a pre-Teague case on whether the decision that the jury trial right applied to the States should be applied retroactively. And it said, well, DiStefano said it wasn't substantive enough to be applied retroactively. That's another holding that allocating it to the judge rather than the jury is procedural rather than substantive. If we look at the pre-Teague cases on burden of proof, they come to precisely the opposite conclusion. Winship was held retroactive in Ivan v. City of New York, and Mulaney v. Wilbur was held retroactive in Hankerson v. North Carolina. So three of the four things that Shryo itself looked at to determine that Ring was to the judge rather than the jury, we went on in terms of the beyond-reasonable-to-out standard of proof. I do want to make one more stab, if I've answered that, at going back to why Apprendi compels the decision. Let me ask you a question about that. And this goes back to Judge Fletcher's question to you. Does you indicated that the maximum under the statute was greater than the sentence imposed here? Is that true? Well, we were debating what's the statutory maximum. Yes. The statutory maximum under the Sentencing Reform Act was 102 months, and my client received twice that. The statutory maximum under the other statutory maximum in Washington was not exceeded, but I don't know off the top of my head exactly what that was. All right. Did this sentence violate Apprendi? Absolutely. In what way? Did Apprendi deal with the statutory maximum and a sentence beyond the statutory maximum? Apprendi didn't deal with Washington's SRA. Apprendi dealt with New Jersey's hate crime increase. It was a different context. The question is, is it a difference that matters, of course? Well, I'm asking you if Apprendi governs this case, as it was written. Let me try to explain to you why I think the answer is yes. Apprendi held that outside of prior convictions, any fact that increases the penalty for a crime above the statutory maximum has to be blah, blah, blah. And we are in agreement that this was not above the statutory maximum. Well, I think we're in disagreement because of how we're defining the statutory maximums. You're now going to Blakely. Correct. Okay. Don't we have to wait for the Supreme Court to tell us what they meant at Blakely and whether that is a new rule or not a new rule or whether it's retroactive? No, because Mr. Shartz, the finality of Mr. Shartz's conviction occurred after Apprendi. Apprendi came first, and then Mr. Shartz's conviction became final. He gets the benefit of Apprendi on his direct appeal because his direct appeal was not yet final. The only reason we have to go to retroactivity analysis is if I have to rely on Blakely and I have to convince you that it's applicable to his conviction, which was previously finalized. What does Apprendi mean, I think, is the question that we're dealing with, because it clearly predated the finality of his conviction. Certainly, it didn't mean only that you couldn't get a hate crime enhancement in New Jersey. It had to mean something more than that. Well, Gould in Kansas was the only State supreme court to say that it applied to SRA statutory maximums like we have here in Washington. What did Blakely say about that? Blakely essentially said Gould applied Apprendi. What did Blakely say about Ring? It said Ring applied Apprendi. What did Ring itself say about Ring? It said Ring applied Apprendi. What did Schreyer v. Summerlin or even this Court's own decision in Summerlin v. Stewart or preceding that and the dissent in that case, what did those all say about Apprendi? That it compelled Ring, that Apprendi was the new rule that produced Ring. I'm trying to pursue Judge Alarcon's line of questioning. Obviously, you would, for purposes of application of Apprendi, want to say that the statutory maximum is the 102 months. Correct. Why is that the statutory maximum within the meaning of Apprendi rather than a sort of a guideline produced maximum? Well, I think the answer is in how Blakely analyzed that, that the highest sentence that a judge could give in the State of Washington. So you need the Blakely gloss on Apprendi to get to that point. I didn't need it in the opening brief, Your Honor, and Gould didn't need it in test. So argue it to me without Blakely. Why? I'm sorry. Argue it to me then without Blakely. Why should I regard the 102-month sentence that's produced by Washington's version of the guidelines, as I understand it? Correct. Why is that the statutory maximum within Apprendi? This Circuit applied Apprendi until Blakely, not applying the guideline maximum. It was the statutory maximum, irrespective of guidelines. There is a key difference between Washington and the Federal guidelines. Okay. Then now explain to me that difference. Now we may be getting somewhere. Okay. Washington's guidelines are statutory. They were enacted by the legislature. They're in RCW 9.94a. The Federal sentencing guidelines are not. They are located in the judicial branch. That was the holding of Mistretta in the late 1980s. That was the reason that the Federal sentencing guidelines were upheld then 15 years ago against a separation of powers challenge. So while it was not clear that Apprendi necessarily applied to the Federal sentencing guidelines because of their non-statutory nature, it was crystal clear to us here in Washington and apparently in Kansas where we have statutory SRAs, statutory guideline maximum, that when a judge in Washington was applying a sentence above that statutory guideline maximum, the judge by statute was using a preponderance of evidence standard, and the judge by statute was finding additional facts over and above what the jury had found. Counsel, let me ask you this. Did the other statutory maxima go away? The higher one? Yes. Did they go away? Were they repealed? Nothing has changed in Washington since Apprendi or Blakely. Okay. So how can those coexist? How can the guideline maxima and the preexisting statutory maxima, how do they coexist? Well, that is the Apprendi problem. It's the problem that the Washington Supreme Court is struggling with. They have arguments scheduled, nine arguments scheduled on November 9th and 10th addressing precisely that, and the legislature is considering options. But the answer is, the only way that they can coexist under Apprendi, using Apprendi as my key case, is if the judge — sorry, the jury rather than the judge, by the beyond a reasonable doubt standard rather than the preponderance of evidence standard, finds the facts that raise the sentence above the statutory cap on the guidelines range. That's a difficult argument to swallow, I have to tell you. Well, it — Blakely said it flowed directly from Apprendi. And when the Blakely dissenters talked about Apprendi, what they criticized was Apprendi's decision and said that they felt it had been wrongly decided and it would cause chaos. But they weren't disputing the fact that Blakely inexorably followed from the decision in Apprendi. Perhaps I should save the balance. Yeah. Let's hear from the other side, and then we'll — you'll have a chance to respond. Thank you, Your Honor. Thank you. May it please the Court. I'm John Sampson, Assistant Attorney General representing the Respondent. In answer to Your Honor's question regarding the statutory maximum, this was a Class A felony, which in Washington State has a statutory maximum of life imprisonment. And that's set out on Supplemental Excerpt's record, page 2, the judgment and sentence. The second page discusses both the standard range and the maximum statutory maximum for that crime being life. The standard range maximum was 102 months, and his actual sentence exceeded that. It essentially doubled that standard range. In this case, relief is available only if the state court decision was an unreasonable application of Supreme Court precedent that existed at the time of the state court adjudication of the merits of the claim. And at that time, the only case that was available was the Supreme Court's decision in Apprendi. The Supreme Court's Blakeley case did not come out until long after the state court had adjudicated this issue. Therefore, the Blakeley case does not apply, even if it could apply as a substantive rule or even if it could apply under the second exception to the Teague doctrine. It still does not apply in this case. Blakeley does not apply in this case because it did not exist at the time of the state court adjudication of the claim. What about the argument that Ms. McLeod is making, though? Excuse me. What about the argument that Ms. McLeod is making, which is to say that, well, Blakeley didn't exist, but all nine of the justices seemed to think that Blakeley inexorably followed from Apprendi. And they split as to whether or not they thought Apprendi was a good idea. Every court that has reached this, other than perhaps the Kansas court that Ms. McLeod mentioned, has said that Blakeley was not dictated by Apprendi. Apprendi did not apply to standard range sentence guidelines, whether state or federal. They have always referred to the statutory maximum. And there's actually language in the cases cited by Respondent, I believe, Simpson, Perenda, and the Dean case, and Booker case, which are cited in our supplemental brief, which talk about how Apprendi dealt with any fact that caused the sentence to exceed the statutory maximum must be presented to the jury. And what they did in Blakeley was actually change the wording of it that, and I don't have the actual quote, but any fact that makes a sentence more than what a judge can impose without an additional finding of facts. So they've gone from what everyone considered to be a traditional statutory maximum, as the term was used in Apprendi, to almost a different term, as that term is now used in Blakeley, to mean not just the statutory max that we learn about in law, but any maximum imposed by a statute and possibly by the federal guidelines, the Supreme Court has not reached that issue yet. The distinction presented by Petitioner is a distinction between the two cases. If my reading of the oral argument transcripts, the Supreme Court is not going to consider that to be a sufficient distinction to say the federal guidelines. Excuse me, Your Honor. So your argument is that Blakeley is a new rule? Yes, exactly, Your Honor. And that's what every court, every circuit court to reach this issue has said, is this is a new rule. It was not dictated by Apprendi, and it does not apply retroactively. Well, I'm sympathetic to that argument. On the other hand, I was just rereading the Blakeley opinions, both Justice Scalia's majority and the other opinions, and they keep arguing about Apprendi. And Justice Scalia is very clear in saying, well, we're simply applying Apprendi. Applying Apprendi in an entirely new situation that was not dictated by Apprendi. They're applying Apprendi, but they're applying it to a novel situation, and that meets the definition of a new rule. When you take an old rule and apply it in a new situation that was not dictated by prior precedent, then that is a new rule. Now, does Teague v. Lane exist any longer in light of AEDPA, or does the AEDPA statutory standard basically replicate, and to the degree of inconsistency, replace Teague v. Lane? They still both exist, Your Honor. There was a Supreme Court case on this issue. I'm thinking it's the Lamberts case, but I'm not entirely sure. But the Supreme Court has said they still both exist, and they can be, and if a state raises both defenses, they're both to be looked at. And so even if Blakely were to apply retroactively under Teague, relief is still not available under 2254D, because the state court decision was a reasonable application. Even if it was a wrong application, which Blakely tells us it was wrong, that's not enough to grant relief. Even if it was clearly erroneous, that's not enough. It was a reasonable application of Apprendi when the state Supreme Court and the state court of appeals said Apprendi only applies to state courts. I understand that. I guess I was going the other way. That is to say, does the definition of new rule in Teague give way to AEDPA? This case law by this court, and I believe by the Supreme Court, has suggested that the definition of new rule is similar. I don't know if the court has actually said it's the exact same, but I think they've come close. That is to say, you're supposed to ask under AEDPA, was the state court applying, giving us a reasonable application of established case law as decided by the United States Supreme Court? Yes, Your Honor. Yes, but the other language of the statute in the Supreme Court's determination of 2254D has the further qualifier in existence at the time of the relevant state court adjudication. So what was the status of the Supreme Court case law as it existed at the time the state court adjudicated these claims? So cases that are decided years later, such as Blakely, simply are not relevant to that because the decision by the state court at the time prior to 2004 was a reasonable adjudication of Apprendi. Unless the court has further questions. I do. Is there a procedural default issue in this case? There is, Your Honor, and actually there is a certificate of appealability issue of whether the issue we've been discussing and the Petitioner discussed is even properly before this court. The issue that was certified by the district court – Could you address the procedural default issue first, and then if you want to discuss the COA issue. Yes, Your Honor. The procedural default issue involves the second habeas corpus claim, which essentially said even if Apprendi doesn't apply, due process imposes a heightened standard of clear and convincing evidence. The state's position in the district court and the district court found was that that claim, the second claim, was not fairly presented to the state Supreme Court as a federal claim. It was not sufficient to cite the Nguyen case? No, Your Honor, because the Nguyen case involved termination of a medical license in a civil proceeding in what was appropriate standard. And referencing that case in the manner that they did in the issue presented and in the argument was not sufficient to raise a federal claim of due process under the federal Constitution in a criminal sentencing case. Now, as I'm now reading, this is, I think, the brief in the Washington Supreme Court, and I'm on page 10 of the brief, it's supplemental excerpt 110, this is Motion for Discretionary Review by Petitioner Sharpe. In the recent decision of Nguyen's citation, the Washington State citation, however, this court rejected the notion that the preponderance of the evidence standard sufficed for the decision about whether to terminate the position's right to practice, the court based its decision on the due process right to notice, meaningful right to be heard, and you're saying that that doesn't raise the issue as to whether or not preponderance of the evidence is the right standard to apply when you've got, I'll call it an extraordinary punishment or sentence. It does not specifically present it as a federal claim. Under Gray v. Netherland, the Court, Supreme Court was very clear there has to be a specific reference to a federal constitutional guarantee along with specific facts, and that vague references to due process are not sufficient. Now, was Nguyen itself based upon federal due process? It was. It was. It was based on federal due process as it applied in a civil case regarding termination of medical license. What the Supreme Court said in Baldwin v. Reese was that in order to fairly present a claim, the petitioner must do more, the Court said, a state prisoner does not fairly present a claim to the state court if that court must read beyond the petitioner brief that does not alert it to the presence of a federal claim. In other words, if the court has to look at the petition and then go look at a separate document as another court opinion to try and determine whether it's a federal claim or not, that is not fair presentation. And that's what the Supreme — State Supreme Court would have to do. They would have to actually open Nguyen up and review it to see, oh, they're raising a federal claim under due process and not a state due process claim. So under Baldwin v. Reese, Gray v. Netherland, it was the same. Yeah. Have you read our opinion in Peterson v. Lambert? Yes, I have, Your Honor. And I do understand that that opinion does take a — does say that citation to state court cases may be sufficient in certain — excuse me, certain situations. I respectfully maintain that under Baldwin v. Reese and under other Supreme Court decisions, what occurred in this case was not sufficient even under Peterson v. Lambert. Well, it may be that I should not have detained you even if I were to find it exhaustive. Then the question is, is there an improper application of Supreme Court case law on extreme punishments? I don't see the Supreme Court case law requiring it. Exactly, Your Honor. And that would be the fallback. The court could affirm on any basis apparent there is no Supreme Court decision even close to what that claim raises. And unless the Court has further questions — Were you going to address the COA issue? I can, Your Honor. I didn't ask you to, but I just wanted to remind you that's where you were going. I appreciate that. I've always been told don't argue issues that weren't raised by the petitioner on the opening, but I will briefly mention it. The Certificate of Appealability said two issues were certified, the first being the second claim in the petition, and the reason being is that it referred to a due process claim, it referred to a heightened standard, and whether that claim was adequately presented. Those words were clearly referring to the second claim, which the district court denied on the basis of procedural bar and failure to properly exhaust, not the apprendee claim. But even if the court were to reach the apprentice-slash-Blakely issue on the merits because the state court decision was a reasonable application of Supreme Court case law, that existed at the time of the adjudication, the petitioner is not entitled to relief, we would ask that the Court affirm the district court's decision. Okay. Thank you very much. Response? Well, at the risk of sounding like a broken record, I did want to go back to apprendee one more time. Counsel argues that there was only the Gould case out of Kansas that thought apprendee said what I thought it said, and so how could Blakely have been clearly dictated by it. I want to call this Court's attention to Wright v. West, which I think was cited only in the amicus brief of NACDL. And that said that basically you don't count the number of judges to determine whether the later case was compelled by the earlier case. It's an objective inquiry. It's not a subjective inquiry. And when making the objective inquiry, you look at the four corners of the prior case to determine whether it compelled the later case. The other case that I want you to call your attention to is Teague itself, because Teague contains a discussion about what do we mean by new rule. And when they discuss it, they talk about some burden of proof cases, and, of course, I'm raising a burden of proof issue. They talk about their own prior decision the year before in Yates v. Aiken. And they say, well, in Yates v. Aiken, we considered whether Francis v. Franklin, a 1987 decision, was compelled by Sandstrom v. Montana. Sandstrom v. Montana involved mandatory presumptions. Francis v. Franklin involved rebuttable mandatory presumptions. And Teague said Francis was compelled by Sandstrom. We held that in Yates v. Aiken. And here in Teague, we're giving that as an example of a later case that's compelled by an earlier case that's not necessarily a new rule. And I call that to your attention because, as with Blakely and Apprendi, it's taking a pre-established rule and applying it to a new factual context, a different sort of jury instruction in that context. But still, the burden of proofholding was considered to be compelled by the older case and not done for the first time in the newer case. The other thing that I want you to take issue with is that counsel says that every circuit, since Blakely was decided, has now called it a new rule. And that's actually not correct. We submitted a statement of supplemental authorities perhaps three weeks ago listing three circuit court cases, Hamoud, I believe, out of the Fourth Circuit, the dissent in Koch out of the Sixth Circuit, and Judge Easterbrook's dissent out of Booker. And each of them, in each of those, it said Blakely, quote, simply applied and did not modify Apprendi. That was the Hamoud case. Blakely cedes were in Apprendi. Blakely rests upon Apprendi. So it's not correct to say that all the post-Blakely jurisprudence calls it a complete break with prior precedent insofar as State court SRA statutory sentencing decisions are concerned. Thank you, Your Honor. Thank you very much. Sharp v. Payne is now submitted for argument. I would like to thank on behalf of the panel for a very good argument on both sides in this case. We've got two more. We're going to get there. The next and the next to the last case on the calendar is Mark Hom v. F.B. Hickory Wind.
judges: Alarcon, W. Fletcher, Rawlinson